## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NATALIE BASTIAN ET AL., | : | |
|     Plaintiffs, | : | CIVIL CASE NO. |
| | : | 3:21-CV-01249 (JCH) |
| v. | : | |
| | : | |
| NED LAMONT ET AL., | : | |
|     Defendants. | : | JULY 6, 2022 |
| | : | |

## RULING ON DEFENDANTS' MOTION TO DISMISS AND MOTION FOR RULE 41(d) RELIEF (DOC. NO. 13) AND DEFENDANTS' RENEWED MOTION TO DISMISS (DOC. NO. 22)

## I.     INTRODUCTION

Plaintiffs Natalie Bastian, Doreen Bastian, and Branford River Resort & Spa, LLC bring this action against Governor Ned Lamont and Commissioner of the Connecticut Department of Economic and Community Development (DECD) in their individual capacities only.  See Compl. at ¶¶ 2-6.  In their four count Complaint, the plaintiffs allege various injuries stemming from certain public health measures implemented by defendants during the early stages of the COVID-19 pandemic that harmed their business.  Id. at ¶¶ 12-15; 32-35.

Defendants have moved to dismiss the Complaint on numerous grounds and have also moved for relief under Federal Rule of Civil Procedure 41(d).  See Defs.' Mot. to Dismiss and for Rule 41(d) Relief (Doc. No. 13); Defs.' Mem. in Supp. of their Mot. to Dismiss and for Rule 41(d) Relief ("Defs.' Mem.") (Doc. No. 13-1); Defs.' Reply in Supp. of their Mot. to Dismiss and for Rule 41(d) Relief ("Defs.' Reply") (Doc. No. 18); Defs.' Renewed Mot. to Dismiss the Compl. ("Defs.' Renewed Mot.") (Doc. No. 22). Plaintiffs oppose this Motion. See Pls.' Mem. of Law in Opp'n to the Defs.' Mot. to Dismiss and

for Rule 41(d) Relief ("Pls.' Mem.") (Doc. No. 17); Pls.' Mem. of Law in Opp'n to Defs.'
Renewed Mot. to Dismiss the Compl. ("Pls.' Renewed Mot. Opp'n") (Doc. No. 24).

For the reasons discussed below, the court grants the Motion to Dismiss and
denies the Motion for Rule 41(d) relief.

## II.   ALLEGED FACTS

In 2009, plaintiff Doreen Bastian opened a spa called Branford River Resort.
Compl. at ¶¶ 8-9.  She successfully owned and operated the business for more than a
decade, and she now manages it for her adult daughter, Natalie Bastian.  Id. at ¶¶ 8, 10.
Prior to the pandemic, the spa "was thriving, returning strong profits." Id. at ¶ 11.  That
all changed in March 2020, when, according to plaintiffs, they "were forced to close their
business by the actions of the [d]efendants." Id. at ¶ 17.

In particular, they allege that, on March 12, 2020, Governor Lamont issued
Executive Order No. 7H, which "order[ed] all businesses that he and Commissioner
David Lehman deemed non-essential to close their physical locations due to the
ongoing coronavirus pandemic." Id. at ¶ 12.  On April 3 of that same year,
"Commissioner Lehman [then] set a policy for spas and salons mandating that their
business locations must continue to remain closed, but permitting them to provide
services at a client's home if the client chose to." Id. at ¶ 13.  Plaintiffs further allege
that, "[s]ince Governor Lamont issued his [E]xecutive [O]rders, Commissioner Lehman
has maintained a non-transparent waiver system that 'allows' businesses to submit a
request to the DECD to be declared as essential." Id. at ¶ 14.  The DECD's "essential
business determination" is then appealable to Governor Lamont but, according to
plaintiffs, "the appeals only make their way back to Commissioner Lehman's office to
rubberstamp the DECD's decision." Id. at ¶ 15.

2

After the Governor's Orders went into effect, plaintiffs "prepared a comprehensive safety plan to ensure the safe reopening of their business" and submitted it to the DECD on April 11, requesting that Branford River Resort be designated as an essential business. Id. at ¶¶ 19, 21.  The response they received two days later was not a model of clarity.  The first part of it reads: "'After careful consideration, your request for a waiver to keep your business location open has been APPROVED.'" Id. at ¶ 23 (quoting Compl. Ex. E (Doc. No. 1-6)).[1]  However, underneath the seeming approval, there was an "[a]dditional [c]omments" section.  Id. at ¶ 24 (quoting Compl. Ex. E). There, plaintiffs were informed that "'[t]he business location must close but you can provide services at a client's home if they choose.'" Id.

Plaintiffs were quite understandably confused.  The same day they received the "approval", Doreen Bastian emailed DECD seeking clarification. Id. at ¶¶ 25-26. On April 15, she "had numerous interactions with Governor Lamont's office in an effort to appeal the DECD's decision." Id. at ¶ 28.  Although she "repeatedly emphasized and explained" that going to clients' homes was more dangerous than implementing the comprehensive safety plan and allowing clients to frequent the business location, her appeal was denied on April 20.  Id. at ¶¶ 29-30.  Plaintiffs also allege that it was Commissioner Lehman – not the Governor or those in his office – that decided the appeal. Id. at ¶ 30.

According to plaintiffs, the inability to operate their business had devastating financial consequences.  They incurred losses "of over $40,000 in April 2020" due to defendants' actions, after having "made approximately $11,000 in profit in April 2019." Id. at ¶ 32.  In the months thereafter, they continued to incur similar losses until they

---

[1] In their Complaint, plaintiffs erroneously cite to Exhibit F.

were allowed to reopen.  Id. at ¶ 33.  They also allege that the method in which

defendants did allow them to operate, i.e., by going to clients' homes, was not

economically viable and would have led to an even greater loss.

Based on these damages, plaintiffs bring four constitutional claims.  In Count

One, they allege that the closure of their business violated their right to pursue a living

in violation of the Privileges or Immunities Clause and Due Process Clause of the

Fourteenth Amendment.  Id. at ¶¶ 37-38.  In Count Two, they allege a violation of their

rights to the use of property under the same.  Id. at ¶¶ 41-42.  Count Three alleges a

Fifth Amendment Takings Clause claim.  Id. at ¶ 44.  Finally, in Count Four, plaintiffs

bring a claim under the Fourteenth Amendment for a violation of their right to not be

deprived of property without due process of law.  Id. at ¶ 47.

## III.   PROCEDURAL HISTORY

### A.   Bastian I

This is not the first time plaintiffs have alleged these claims in federal court.  On

May 28, 2020, they filed their first Complaint in this District against these same

defendants.  See Compl. Bastian et al. v. Lamont et al., No. 3:20-CV-00733 (D. Conn.

May 28, 2020) (Doc. No. 1).  That case, Bastian I, was before Judge Covello, and

plaintiffs sought essentially the same relief they seek here based on the same set of

alleged facts.[2]  See generally id. Shortly after filing their Complaint, plaintiffs moved for

a Temporary Restraining Order and Preliminary Injunction.  See Mot. for TRO and

Prelim. Inj., Bastian I (D. Conn. June 3, 2020) (Doc. No. 6).  That Motion was fully

---

[2] Plaintiffs did seek an injunction in that case, a demand they appear to have dropped here. See Compl. at ¶ 49 (seeking only damages, attorneys' fees, and such other relief as the court deems fair and equitable, but entitling that section of the Complaint "[d]amages and [i]njunctive [r]elief").

joined, but before the court had the opportunity to rule on the Motion, plaintiffs moved to amend the caption to their Complaint – and then the Complaint itself – due to what they termed "a memory and scrivener's error made in the haste of filing for injunctive relief." See Mot. to Amend/Correct Caption, Bastian I (D. Conn. July 20, 2020) (Doc. No. 16); Mot. to Amend Compl., Bastian I, (D. Conn. Aug. 13, 2020) (Doc. No. 19).  In particular, plaintiffs had accidently listed "Branford River Spa and Resort, LLC" as a plaintiff instead of "Bastian's Countryside Day Spa, LLC." Id.  Because the same error was present in plaintiffs' Motion seeking emergency relief, Judge Covello denied that Motion without prejudice to refiling.  See Order, Bastian I (D. Conn. Aug. 31, 2020) (Doc. No. 21).

Plaintiffs never refiled their emergency motion.  Instead, motion practice proceeded on plaintiffs' Motion to Amend.  Defendants opposed that Motion.  See Defs.' Mem. in Opp'n to Pls.' Mot. to Amend Compl., Bastian I (D. Conn. Sept. 3, 2020) (Doc. No. 23).  They argued, inter alia, that plaintiffs' Motion was not timely.  Id. at 1-2.  In particular, defendants represented that they had told plaintiffs that "Branford River Spa and Resort, LLC [did] not exist" and was improperly named as a plaintiff in the original action "well before the deadline for [p]laintiffs to move to amend their Complaint." Id. at 1.  Instead of addressing the issue, plaintiffs "waited until seventeen days after the deadline (and fifty days after [d]efendants pointed out the problem) to move to amend." Id. at 1-2.  In response, plaintiffs' counsel represented that his "intention was to move to amend both the caption and the complaint prior to the deadline for amending, but staffing adjustments and a rush of last-minute briefing in some of his other cases

distracted him." Pls.' Reply Mem. in Supp. of their Mot. to Amend Compl. at 3, <u>Bastian I</u> (D. Conn. Sept. 17, 2020) (Doc. No. 24).

Ultimately, Judge Covello granted the Motion to Amend the caption, but denied the Motion to Amend the Complaint without prejudice on other grounds.  <u>See</u> Order, <u>Bastian I</u> (D. Conn. Jan. 29, 2021) (Doc. No. 25) (granting Motion to Amend caption); Order, <u>Bastian I</u> (D. Conn. Jan. 29, 2021) (Doc. No. 26) (denying Motion to Amend Complaint without prejudice for failing to accompany the Motion with a memorandum of law in accordance with the local rules).  Defendants thereafter moved to dismiss.[3]  <u>See</u> Defs.' Mot. to Dismiss, <u>Bastian I</u> (D. Conn. Mar. 1, 2020) (Doc. No. 27).  Plaintiffs did not oppose that Motion.  Rather, twenty-one days later, they docketed the Amended Complaint Judge Covello had just denied them leave to file.  <u>See</u> Am. Compl., <u>Bastian I</u> (D. Conn. Mar. 22, 2021) (Doc. No. 28).  Defendants, naturally, moved to strike the Amended Complaint.  <u>See</u> Mot. to Strike Pls.' Putative Am. Compl., <u>Bastian I</u> (D. Conn.

---

[3] Although plaintiffs did not move to dismiss the Complaint under Rule 12(b)(5), they did note in multiple earlier filings that plaintiffs had "not yet either served [d]efendants in their individual capacities or requested that [d]efendants waive individual capacity service." <u>See</u> Defs.' Unopposed First Mot. for an Extension of Time in Which to Resp. to Pls.' Compl. at 1 n. 1, <u>Bastian I</u> (D. Conn. June 24, 2020) (Doc. No. 9); Defs.' Unopposed Second Mot. for an Extension of Time in Which to Resp. to Pls.' Compl. at 1 n. 1, <u>Bastian I</u> (D. Conn. July 13, 2020) (Doc. No. 14) (same); Defs.' Unopposed Third Mot. for an Extension of Time in Which to Resp. to Pls.' Compl. at 1 n. 1, <u>Bastian I</u> (D. Conn. Aug. 13, 2020) (Doc. No. 18) (same). There does not appear to be a record on the <u>Bastian I</u> docket of plaintiffs ever remedying that error, which they have repeated in this case.

Plaintiffs' Memorandum supports this conclusion. In attempting to excuse their deficient service, plaintiffs' counsel represented that, in serving process in this case, he "assumed that the same addresses would suffice for service" as the ones his office had used in <u>Bastian I</u>. Pls.' Mem. at 6. Yet, as defendants pointed out to plaintiffs multiple times in <u>Bastian I</u>, their method of serving process in that case was defective.  <u>See</u> Defs.' Unopposed First Mot. for an Extension of Time in Which to Resp. to Pls.' Compl. at 1 n. 1, <u>Bastian I</u> (D. Conn. June 24, 2020) (Doc. No. 9); Defs.' Unopposed Second Mot. for an Extension of Time in Which to Resp. to Pls.' Compl. at 1 n. 1, <u>Bastian I</u> (D. Conn. July 13, 2020) (Doc. No. 14) (same); Defs.' Unopposed Third Mot. for an Extension of Time in Which to Resp. to Pls.' Compl. at 1 n. 1, <u>Bastian I</u> (D. Conn. Aug. 13, 2020) (Doc. No. 18) (same).

Mar. 31, 2021) (Doc. No. 29).  Rather than renew their Motion to Amend their Complaint or oppose the Motion to Strike, plaintiffs voluntarily dismissed the case.

      B.    <u>Bastian II</u>

Five months later, plaintiffs were back in court.  They filed the instant action, <u>Bastian II</u>, on September 20, 2021.  Yet, inexplicably, they again failed to correctly serve defendants in their individual capacities.  After defendants moved to dismiss in part on that ground, plaintiffs' counsel freely admitted on his mistake but promised that he had "directed his office to arrange to serve Governor Lamont" and would "move under Fed. R. Civ. P. 4(m) for additional time to properly serve [d]efendants." Pls.' Mem. at 6.  That Memorandum was filed on December 17, 2021.  Plaintiffs' counsel proceeded to do neither of those things. Instead, defendants filed their Reply in early January, and plaintiffs' counsel apparently made no attempt to effectuate service for the next three months. Pls.' Reply Mem. in Supp. of their Mot. to Amend Compl. at 3, <u>Bastian I</u> (D. Conn. Sept. 17, 2020) (Doc. No. 24).

This court, however, "provide[d] [plaintiffs] with a second chance." <u>See</u> Order at 2 (Doc. No. 19).  In an Order dated April 5, 2022, the court exercised its discretion under Rule 4(m) to grant plaintiffs an extension to serve defendants in their individual capacities.[4]  <u>Id.</u>  Specifically, the court ordered plaintiffs "to serve each defendant and

---

[4] Rule 4(m) provides that:

> If a defendant is not served within 90 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant <u>or</u> order that service be made within a specified time.

Fed. R. Civ. P. 4(m) (emphasis added).

file proof of that service on the docket no later than twenty-one (21) days from the date of this Order." Id. at 2.  The court also stated that "[f]ailure to do so will lead to dismissal of this case." Id. (emphasis added).

Despite this court's clear instructions and their inexcusable delay to that point, plaintiffs failed to meet that deadline.  On April 27, however – the day after the deadline – plaintiffs served defendants and filed proof of that service on the docket.  See Proof of Service (Doc. No. 20); Aff. of Cameron L. Atkinson (Doc. No. 21).  Defendants subsequently filed a Renewed Motion to Dismiss, incorporating by reference their previous arguments but reasserting "that this [c]ourt should dismiss the Complaint on the ground that [p]laintiffs failed to perform service of process within the time permitted by [Rule 4(m)] and within the extension of time permitted by this [c]ourt." Defs.' Renewed Mot. at 1.  The court ordered plaintiffs to respond to the renewed Motion, see Order to Show Cause (Doc. No. 23), and on June 1, 2022, they did.  See Pls.' Renewed Mot. Opp'n.

Yet in their Memorandum, plaintiffs' counsel again demonstrated the lack of basic understanding of the rules of procedure that have plagued his efforts to bring this lawsuit since Bastian I.  In that Memorandum, plaintiffs' counsel argues that his service was timely because, under Federal Rule of Civil Procedure 6(a)(1), "the date of the Court's April 5, 2022 [O]rder – the triggering event for Fed. R. Civ. 6(a)(1)(A) purposes – was mandatorily excluded from the 21-day deadline.  Thus, the twenty-one (21) days began to run on April 6, 2022, not April 5, 2022.  Twenty-one (21) days from April 6, 2022, places the deadline for compliance on April 27, 2022." Id. at 4. Rule 6(a) does provide that, when computing time for a period stated in days, the day of the event that

triggers the period is excluded.  Rule 6(a) then continues to instruct a court to "count every day" after that.  Fed. R. Civ. P. 6(a)(1)(B).  That means that while April 5 – the date of this court's Order – is not counted, Day 1 is then April 6, Day 2 is April 7 (and so on), making the deadline for serving process and filing proof of that service on the docket pursuant to the court's Order April 26, not April 27.

Plaintiffs' counsel badly erred in his calculation of the deadline by essentially asking the court to not only exclude April 5, but also to count April 6 as "Day 0" and then start at Day 1 on April 7.  Both common sense and a cursory reading of Rule 6 belie this interpretation.  Moreover, a brief glance through case law in this District reveals multiple instances where courts have computed time under Rule 6 in a manner that refutes plaintiffs' counsel's attempts to rewrite that Rule here.  See, e.g. Gladstein v. Goldfield, No. 3:18-CV-0926, 2021 WL 1049898, at *2 (D. Conn. Mar. 19, 2021) (calculating a 7-day period by excluding July 31, 2020, the day the court's Order was issued, and counting the next day, August 1, as Day 1, to conclude that the deadline was August 7); Sease v. Frenis, No. 17-CV-770, 2021 WL 260398, at *4 n. 3 (D. Conn. Jan. 25, 2021) (calculating a 30-day period in the same manner); HSBC Bank, USA, Nat'l Assn. v. Harris, --- F. Supp. 3d ----, 2021 WL 5494587, at *1 n. 1 (D. Conn. Nov. 23, 2021) (calculating a 21-day period by observing that "HSBC filed its motion for summary judgment on October 10, 2021, and so, the deadline for Harris's response was October 31, 2021").  The court therefore proceeds with its analysis based on its conclusion that plaintiffs failed to serve defendants within the time allotted under the court's April 5 Order.

## IV.   STANDARD OF REVIEW

### A.   Rule 12(b)(5)

Federal Rule of Civil Procedure 12(b)(5) allows a defendant to move to dismiss a complaint based on inadequate service. Fed. R. Civ. P. 12(b)(5).  "[W]hen a defendant moves to dismiss under Rule 12(b)(5), the plaintiff bears the burden of proving adequate service." Dickerson v. Napolitano, 604 F.3d 732, 752 (2d Cir. 2010) (citation omitted). "To determine whether service has been satisfied, the court is permitted to look beyond the complaint." See Founders Ins. Co. v. Cuz DHS, LLC, No. 3:17-CV-1476 (JCH), 2017 WL 5892194, at *3 (D. Conn. Nov. 28, 2017); George v. Prof'l Disposables Int'l, Inc., 221 F. Supp. 3d 428, 432 (S.D.N.Y. 2016) ("[i]n considering a Rule 12(b)(5) motion to dismiss for insufficient service of process, a court must look to matters outside the complaint determine whether it has jurisdiction." (citation and brackets omitted)).

### B.   Rule 12(b)(6)

To withstand a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  The plausibility standard is not a probability requirement; the pleading must show, not merely allege, that the pleader is entitled to relief.  Id.  Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements", are not entitled to a presumption of truth.  Id.  However, when

reviewing a motion to dismiss, the court must accept the factual allegations in the operative complaint as true and draw all reasonable inferences in the non-movant's favor.  See Graziano v. Pataki, 689 F.3d 110, 114 (2d Cir. 2012).

C.      Rule 41(d)

Federal Rule of Civil Procedure 41(a)(1)(A)(i) permits a plaintiff to "dismiss an action without a court order by filing [ ] a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment." Fed. R. Civ. P. 41(a)(1)(A)(i).  Rule 41(d), however, imposes an additional condition on the power given to plaintiffs in Rule 41(a)(1)(A)(i).  Pursuant to Rule 41(d), "[i]f a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court [ ] may order the plaintiff to pay all or part of the costs of that previous action." Fed. R. Civ. P. 41(d).  Rule 41(d) also authorizes a court, in its discretion, to "stay the proceedings until the plaintiff has complied." Id.  In the Second Circuit, "the costs of [a] previous action" include attorneys' fees.  Horowitz v. 148 S. Emerson Assocs. LLC, 888 F.3d 13, 26 (2d Cir. 2018)

The court reviews the Complaint for the purposes of the Rule 41(d) Motion in the same manner as it would a motion to dismiss, accepting factual allegations as true and drawing reasonable inferences in plaintiffs' favor.  Id. at 16 n.1 (accepting a complaint's factual allegations as true for the purposes of a motion to dismiss and a Rule 41(d) motion).  The court also considers "the records and decisions in the various judicial proceedings involving the parties . . . [because these] are facts of which [the court] may take judicial notice." Id.

**V.      ANALYSIS**

    A.      <u>Motion to Dismiss</u>

        1.      Rule 12(b)(5)

For the reasons discussed above, <u>see</u> <u>supra</u> Section III, the court grants the Motion to Dismiss for failure to properly serve defendants.  This court is usually forgiving of procedural errors made by attorneys.  As plaintiffs' counsel has repeatedly pointed out, "[t]he practice of law is called a practice for a reason. Lawyers make missteps – even serious ones despite their best intentions and efforts." Pls.' Renewed Mot. Opp'n at 1.  Yet the parade of errors counsel and his office have made over the course of <u>Bastian I</u> and <u>Bastian II</u> for no other reason than lack of attention to detail or deadlines are particularly troubling here.  Had counsel merely made one or two mistakes, the court would not dismiss plaintiffs' Complaint under Rule 12(b)(5) here.  As such, the court's decision to grant the Motion to Dismiss here must be understood in the context of the full litigation history between these parties.

Most troubling to the court is plaintiffs' counsel's repeated failure to remedy errors after being informed they exist.  While litigating <u>Bastian I</u>, plaintiffs' counsel inexplicably misnamed the plaintiff in the captions of both the Complaint and the Motion for Injunctive Relief.  <u>See</u> Mot. to Amend/Correct Caption, <u>Bastian I</u> (D. Conn. July 20, 2020); Mot. to Amend Compl., <u>Bastian I</u>, (D. Conn. Aug. 13, 2020); Order, <u>Bastian I</u> (D. Conn. Aug. 31, 2020).  Although plaintiffs' counsel was apprised of the miscaptioned Complaint before the deadline to file Motion to Amend, he missed the deadline: seventeen days late, he filed an untimely Motion to Amend, which the court denied. <u>See</u> Defs.' Mem. in Opp'n to Pls.' Mot. to Amend Compl., <u>Bastian I</u> (D. Conn. Sept. 3, 2020); Pls.' Reply Mem. in Supp. of their Mot. to Amend Compl. at 3, <u>Bastian I</u> (D.

12

Conn. Sept. 17, 2020).  Then, when the defendants filed their Motion to Dismiss,

plaintiffs' counsel failed to respond to that Motion, but instead filed an Amended

Complaint in spite of the court's recent denial of his Motion to Amend.  See Defs.' Mot.

to Dismiss, Bastian I (D. Conn. Mar. 1, 2020); Am. Compl., Bastian I (D. Conn. Mar. 22,

2021).

    Plaintiffs' counsel's lack of diligence has continued into the instant case.  When

plaintiffs' counsel discovered that he had failed to properly serve the defendants—an

error which he had already committed in Bastian I and been repeatedly advised of by

defense counsel[5]—he represented to this court in his December 17, 2021 Opposition

that he would move for additional time to effect service.  See Pls.' Mem. at 6.  Despite

his assurances to the court, he neglected to file a Motion to Extend for nearly four

months.  In light of plaintiffs' counsel's continued failure to move for an extension or

properly serve the defendants, on April 5, 2022, the court issued an Order pursuant to

Federal Rule of Civil Procedure 4(m), directing the plaintiffs to serve each defendant

and file proof of service within 21 days.  See Rule 4(m) Order (Doc. No. 19).  Again,

plaintiffs' counsel failed to serve each defendant and file proof of service within the

requisite 21-day period.  See Order to Show Cause (Doc. No. 23).

    Thus, in light of the alarming abundance of errors and delays caused by plaintiffs'

counsel over the course of this litigation, the court grants the Defendants' Motion to

Dismiss for failure to serve.

---

[5] See, e.g., Defs.' Unopposed First Mot. for an Extension of Time in Which to Resp. to Pls.'
Compl. at 1 n. 1, Bastian I (D. Conn. June 24, 2020) (noting plaintiffs had "not yet either served
[d]efendants in their individual capacities or requested that [d]efendants waive individual capacity
service.").

2.      Rule 12(b)(6)

Even if the plaintiffs had timely served the defendants, the court likely would have granted the defendants' Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6).  See Defs.' Mem. at 14-32.  In particular, the court would have determined that the defendants were entitled to qualified immunity.

State officials are entitled to qualified immunity "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" Liberian Cmty. Ass'n of Connecticut v. Lamont, 970 F.3d 174, 186 (2d Cir. 2020) (quoting District of Columbia v. Wesby, ––– U.S. ––– (2018)).  A right is clearly established if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Mullenix v. Luna, 577 U.S. 7 (2015) (citation omitted).  In other words, while existing precedent need not be "directly on point", it "must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011).  Where, as here, the qualified immunity defense is asserted on a Rule 12(b)(6) motion, the court is confined to reviewing "the contents of the complaint," and "the allegations must be read in the light most favorable to [the plaintiff]." Looney v. Black, 702 F.3d 701, 710 (2d Cir. 2012) (internal quotation marks omitted).

Here, the plaintiffs allege that Governor Lamont violated their constitutional rights when he issued Executive Order 7H in response to the COVID pandemic on March 12, 2020.  See Compl. at ¶ 12.  They further allege that Commissioner Lehman unlawfully set and enforced policies that shuttered the plaintiffs' spa business, culminating in his April 20, 2020 final denial of the spa's request for an exemption.  See id. at ¶¶ 12-15, 24, 29-30.  However, even if those acts were unlawful, the defendants

14

are nonetheless entitled to qualified immunity because the illegality of their conduct was far from clearly established during the relevant time period.[6]

Whether, in the face of a public health crisis, state officials could legally adopt and enforce temporary public safety measures was plainly not "beyond debate" at the time of the defendants' actions.  Indeed, months after the March and April events alleged in the Complaint, in August, 2020, the Second Circuit explained that "[n]o significant precedent had previously articulated the requirements of substantive due process[ or] procedural due process . . . in the quarantine or infectious diseases contexts . . . ." Liberian Community Assn. of Connecticut v.Lamont, 970 F.3d 174, 193 (2d Cir. 2020).  Although the Circuit identified no meaningful precedent guiding officials' actions in response to infectious diseases, non-merits orders from the Supreme Court over the course of the pandemic, while not binding, have suggested that courts should grant wide latitude to elected officials under these circumstances.  See South Bay United Pentecostal Church, 140 S. Ct. at 1613 (Roberts, C.J., concurring in the judgment denying temporary injunction) ("When those officials undertake[ ] to act in areas fraught with medical and scientific uncertainties, their latitude must be especially broad.") (internal quotation marks and citations omitted) (alteration in original); Andino v. Middleton, 141 S. Ct. 9, 10 (2020) (Kavanaugh, J., concurring in the judgment granting stay) (same); Democratic Nat'l Comm. v. Wisconsin State Legislature, —— U.S. ——, 141 S. Ct. 28 (2020) (Kavanaugh, J., concurring in the judgment denying application to vacate stay) ("a State legislature's decision either to keep or to make changes to

---

[6] "[A] court need not determine whether a defendant violated a plaintiff's rights if it decides that the right was not clearly established."  Liberian Cmty. Ass'n of Connecticut, 970 F.3d at 186.

election rules to address COVID-19 ordinarily should not be subject to second-guessing by an unelected federal judiciary, which lacks the background, competence, and expertise to assess public health and is not accountable to the people." (internal quotation marks and citation omitted)).  Many of these decisions rely on the Supreme Court's Ruling in Jacobson v. Massachusetts, 197 U.S. 11 (1905),[7] which held that the Constitution entrusts "[t]he safety and the health of the people" to state officials "to guard and protect."  Id. at 28.  To fulfill this responsibility, state officials may restrict constitutional rights in response to public health crises as long as the restraints have a "real or substantial relation" to the crisis and are not "beyond all question, a plain, palpable invasion of rights secured by the fundamental law."  Jacobson, 197 U.S. at 31.

Given the lack of precedent suggesting the defendants' actions were unconstitutional, it is implausible that "every reasonable official" would have understood issuing or enforcing public health policies violated the plaintiffs' rights.  Nor have the plaintiffs plausibly alleged facts suggesting that the defendants' actions had no "real or substantial relation" to the COVID-19 pandemic or were unquestionably "a plain, palpable invasion of rights."  197 U.S. at 31.  Rather, Jacobson suggests that Governor Lamont and Commissioner Lehman were acting within their duty, as state officials, to protect "[t]he safety and health of the people."  197 U.S. at 28.  Thus, because the

---

[7] Jacobson does not govern First Amendment Free Exercise claims.  See Roman Catholic Diocese of Brooklyn v. Cuomo, 141 S. Ct. 63 (2020) (per curiam); Agudath Israel of Am. v. Cuomo, 983 F.3d 620, 635 (2d Cir. 2020).  However, Jacobson remains binding upon this court as to the claims in the instant case, which do not concern the right to free exercise.  See, e.g., Hopkins Hawley LLC v. Cuomo, 518 F. Supp. 3d 705, 713 (S.D.N.Y. 2021) (discussing Jacobson's inapplicability to free exercise claims but applying Jacobson's framework to assess claims in which the free exercise clause was not at issue); see also Butler v. City of New York, No. 20 CIV. 4067 (ER), 2021 WL 4084501, at *5 (S.D.N.Y. Sept. 8, 2021) ("the majority of courts in this Circuit—along with several courts in other [C]ircuits—have limited Roman Catholic Diocese to First Amendment free exercise challenges") (collecting cases in this and other Circuits).

unlawfulness of their actions was not "clearly established", qualified immunity would also bar the plaintiffs' claims against the defendants.[8]

     C.     <u>Rule 41(d)</u>

     The defendants move the court to award costs under Federal Rule of Civil Procedure 41(d).  <u>See</u> Defs.' Mem. (Doc. No. 13-1).

     Appropriate "targets of deterrence under [Rule 41(d)]" include "litigants . . . that file complaints and quickly dismiss them, perhaps in reaction to initial unfavorable rulings, or hoping for a subsequent case assignment to a judge they view as more favorable." <u>Horowitz v. 148 S. Emerson Assocs. LLC</u>, 888 F.3d 13, 26 (2d Cir. 2018). However, "[t]here is no requirement in Rule 41(d) or the relevant case law that a defendant must show bad faith on the part of the plaintiff in order to recover costs." <u>Lombardo v. R.L. Young, Inc.</u>, No 3:18-CV-188, 2018 WL 6727356, at *2 (D. Conn. Dec. 21, 2018) (quoting <u>Loubier v. Modern Acoustics, Inc.</u>, 178 F.R.D. 17, 22 (D. Conn 1998)); <u>see also</u> <u>Adams v. N.Y. State Educ. Dep't</u>, 630 F. Supp. 2d 333, 344 (S.D.N.Y. 2009) (observing that bad faith is not required but may be considered by a court determining whether to impose costs under Rule 41(d)).

     Rather, Rule 41(d) requires only that a defendant establish that "a plaintiff who previously dismissed an action in any court [has] file[d] an action based on or including the same claim against the same defendant." Fed. R. Civ. P. 41(d).  The Second Circuit

---

[8] Other federal district courts have taken the same tack, finding government officials entitled to qualified immunity for their responses to the COVID-19 pandemic.  <u>See</u> <u>Hoque v. Scott</u>, No. 2:20-CV-218, 2021 WL 6050864, at *4–5 (D. Vt. Dec. 21, 2021); <u>Benner v. Wolf</u>, 2021 WL 4123973, at *5 (M.D. Penn. Sept. 9, 2021); <u>Case v. Ivey</u>, —— F. Supp. 3d ——, 2021 WL 2210589, at *25–26 (M.D. Ala. June 1, 2021); <u>Northland Baptist Church of St. Paul v. Walz</u>, —— F. Supp. 3d ——, 2021 WL 1195821, at *8 (D. Minn. Mar. 30, 2021); <u>Hartman v. Acton</u>, 499 F. Supp. 3d 523, 538 (S.D. Ohio 2020); <u>Pleasant View Baptist Church v. Beshear</u>, No. 220CV00166GFVTCJS, 2021 WL 4496386, at *8 (E.D. Ky. Sept. 30, 2021).

has interpreted the phrase "based on" to encompass "actions [that] involve different theories of recovery" or different causes of action. Horowitz, 888 F.3d at 23.

The plaintiffs "do not dispute that they have filed a very similar lawsuit to their first lawsuit that brings it within the parameters of Rule 41(d) . . . ." See Pls.' Mem. at 21. In tactically dismissing Bastian I before bringing many of the same claims in the instant case, the plaintiffs generated unnecessary costs for the defendants and flouted the spirit of the Rules of Civil Procedure.  The plaintiffs' repeated missteps and apparent gamesmanship, which the court has detailed, see supra pp. 4-9, warrant a "penal[ty] . . . for re-filing [effectively] the very suit" they "previously dismissed."  Pelczar v. Pelczar, No. 16-CV-55 (CBA) (LB), 2017 WL 3105855, at *2 (E.D.N.Y. July 20, 2017) (citation omitted).  Absent a "satisfying explanation for the course of litigation conduct in which [they] engaged" or a showing by plaintiffs that their actions promoted judicial economy, the court concludes that an award of costs is warranted here.  Lombardo, 2018 WL 6727356, at *2.

The court therefore grants in part the defendants' Motion for certain costs.  The plaintiffs are ordered to reimburse the plaintiffs for costs to prepare their first Motion to Dismiss in the instant case (Doc. No. 13).  Because the plaintiffs' maneuverings have resulted in unnecessary costs to the defendants, who were made to draft a Motion to Dismiss in the instant case after having filed such a Motion in Bastian I, the court now redistributes these costs to deter similar abuses or misuses of the judicial system.  See, e.g., Horowitz, 888 F.3d at 26.  Within 14 days of this Ruling, the defendants are ordered to file a Memorandum addressing the appropriate amount of costs.  Plaintiffs should respond within 14 days of the filing of the defendants' Memorandum.  The court

encourages the parties to confer and come to an agreement without court intervention, but this time schedule will not be altered.

## VI.    CONCLUSION

For the foregoing reasons, the court grants the defendants' Motion to Dismiss (Doc. No. 13) and Renewed Motion to Dismiss (Doc. No. 22) in whole for failure to serve.  The plaintiffs' claims are dismissed without prejudice.  The defendants' Motion for Rule 41(d) Relief (Doc. No. 13) is granted as to the defendants' costs to draft their original Motion to Dismiss in this case (Doc. No. 13).

**SO ORDERED.**

Dated at New Haven, Connecticut this 6th day of July 2022.


 /s/ Janet C. Hall
Janet C. Hall
United States District Judge